UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL DUANE TURNBO,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>Defendant. | No.  2:20-cv-00264 KJM CKD (SS)<br><br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for disability and disability insurance benefits under Title II of the Social Security Act ("Act"). For the reasons discussed below, the court will recommend that plaintiff's motion for summary judgment be granted and the Commissioner's cross-motion for summary judgment be denied.

BACKGROUND

Plaintiff, born in 1971, is a Gulf War veteran whose jobs over a 20-year period included hauling heavy equipment, running cranes, and driving trucks.  His most recent job was at Home Depot, but he stopped working in September 2014 due to stress, depression, and other issues. Administrative Transcript (AT) 72, 82-83, 108, 589.

1

Plaintiff filed an application for disability insurance benefits (DIB)[1] in January 2015, alleging disability beginning September 15, 2014. AT 319-320. Plaintiff alleged disability due to osteoarthritis of the knees, anxiety, depression, fibromyalgia, and cervical spondylosis. AT 184. In a decision dated April 24, 2017, the ALJ found that plaintiff was not disabled. AT 158-171. The Appeals Council remanded the case back to the ALJ. AT 177-181.

After a second hearing, the ALJ issued a decision on October 19, 2018, finding plaintiff not disabled from the alleged onset date, September 15, 2014, through the date last insured, September 30, 2017.[2] AT 36-48. The ALJ made the following findings (citations to 20 C.F.R.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

[2] In his October 19, 2018 decision, the ALJ noted: "In its . . . remand order, the Appeals Council

omitted):

> 1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2017.
>
> 2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of September 15, 2014 through either his date last insured of September 30, 2017 or the date of this new hearing decision.
>
> 3. Through the date last insured, and through the date of this new hearing decision, the claimant had the following severe impairment: post-traumatic stress disorder.
>
> 4. Through the date last insured, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, and through the date of this new hearing decision, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant cannot be expected to work as a member of a team; can have no interaction with the public; and to the extent that interaction is required at all with coworkers and supervisors, such interaction must be limited to no more than an occasional basis.
>
> 6. Through the date last insured, and through the date of this decision, the claimant was unable to perform any past relevant work.
>
> 7. The claimant was born on XX/XX/1971 and was 46 years old, which is defined as a younger individual age 18-49, on the date last insured.
>
> 8. The claimant has at least a high-school education and is able to communicate in English.
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills.

---

directed the undersigned to consider whether the claimant is disabled . . . during the entire period at issue, i.e., from the alleged onset date, September 15, 2014, through the **later** of the date last insured of September 30, 2017, or the date of the new hearing decision. The Appeal Council's decision did not explain why it requires me to consider whether the claimant is disabled through the date of this new hearing decision." AT 36 (emphasis in original).

The ALJ determined that, under the Act, plaintiff's date last insured was September 30, 2017. "Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits." AT 37.

3

> 10. Through the date last insured, and through the date of this new hearing decision, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.
>
> 11. The claimant was not under a disability, as defined in the Social Security Act, at any time from September 15, 2014, the alleged onset date, through either the date last insured of September 30, 2017 or through the date of this new hearing decision.

AT 38-48.

The ALJ relied on vocational expert (VE) testimony that plaintiff could perform the requirements of sedentary jobs such as hand packager, small parts assembly, and office helper, factoring in a 50% erosion of the job numbers "due to the limitation on teamwork and to avoid intense interpersonal contact, as well as contact with the public." AT 47. "The undersigned would also note that these job numbers are based on a more restrictive hypothetical than [the RFC] to include a limitation to no more than sedentary work." AT 47.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled:  (1) the ALJ erred in finding that plaintiff's physical impairments were non-severe; (2) the ALJ erred in evaluating plaintiff's subjective symptom testimony; (3) the ALJ erred in weighing the medical opinion evidence; and (4) the ALJ's Step Five finding is not supported by substantial evidence.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

A.  Credibility

Plaintiff asserts that the ALJ improperly discounted his subjective statements about his symptoms and their limiting effects.

The ALJ summarized plaintiff's statements about his condition, made in hearing testimony and elsewhere in the record, as follows:

> In claimant's initial disability report, he alleged disability based on PTSD, anxiety, and depression.[3] At this hearing, the claimant reiterated his complaints regarding these conditions. The claimant testified that he does not do well with being around people, specifically with people walking behind him, looking at him in a way he finds to be funny, or speaking to him. He also testified to having problems with doors that are behind him. He testified to anger issues when driving a motor vehicle. He testified that he has not slept in a bed in ten years and that he sleeps on a couch due to a need to sleep near a door. He testified that when he was working, he was able to do so because his job gave him a mission to do every day. He further testified that he subsequently had problems with stress and snapped, and then did not leave his house for a year, around 2014.

AT 43-44.

The ALJ found that plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AT 44.

---

[3] Citing AT 361.

The ALJ summarized the objective medical evidence beginning in October 2014, including plaintiff's PTSD diagnosis and treatment with various medications. AT 44. The ALJ noted a VA doctor's March 2015 report that plaintiff "experienced anxiety, fear of being in public places, nightmares, isolative behavior, and limited engagement outside his home," resulting in a second PTSD diagnosis. AT 44, citing AT 701-705. Plaintiff's mental health treatment continued through June 2017. AT 44.

Next, the ALJ summarized the opinion evidence, including two State agency psychological consultants' opinions, which the ALJ partially credited in formulating the RFC. AT 45. The ALJ summarized plaintiff's GAF scores[4], which ranged from 40 to 50, but found them of limited evidentiary value. AT 46. The ALJ noted the lay witness statements provided by plaintiff's mother, which "generally address the claimant's non-severe physical impairments and do not discuss his PTSD," and gave these statements little weight. AT 46, citing AT 369-377, 414-421.

Turning back to plaintiff's credibility, the ALJ concluded:

> In sum, the above [RFC] assessment is supported by the evidence of record. . . . The claimant's mental limitations derive from the claimant's PTSD. However, while the claimant's ability to work is limited, the medical evidence of record does not support that he is limited to the extent alleged. The claimant's subjective complaints are not entirely consistent with the medical evidence and other evidence in the record, as discussed above.

AT 46.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be

---

[4] GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders at 34 (4th ed. 2000) ("DSM IV-TR"). A GAF of 41-50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).

supported by "a specific, cogent reason for the disbelief"). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

The Ninth Circuit recently clarified that, when discounting subjective testimony, an ALJ must provide "specific, clear, and convincing *reasons* for doing so." Wade v. Saul, 850 F. App'x 568, 569 (9th Cir. 2021) (emphasis in original), citing Lambert v. Saul, 980 F.3d 1266, 1277–78 (9th Cir. 2020).

> To be sure, we confirm our precedent does "not require ALJs to perform a line-by-line exegesis of the claimant's testimony...." Lambert, 980 F.3d at 1277. But the ALJ's detailed overview of [the claimant's] medical history—coupled with a nonspecific boilerplate conclusion that her testimony was "not entirely consistent" with her medical treatment—was not enough to satisfy the minimal requirements for assessing credibility. Id. at 1277–78; see Brown-Hunter v. Colvin, 806 F.3d 487, 494 (9th Cir. 2015) ("We cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [claimant's symptom] testimony where, as here, the ALJ never identified which testimony she found not credible, and never explained which evidence contradicted that testimony."). Summarizing [the claimant's] testimony about her limitations from her mental impairments, and later mentioning that her symptoms improved with medication and treatment, does not provide clear and convincing reasons to discredit that testimony. See Lambert, 980 F.3d at 1278. This is reversible error. Id. ("Because the ALJ did not provide enough 'reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence,' we cannot treat the error as harmless." (quoting Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014))).

Wade, 850 F. App'x at 569.

Similarly, here, the ALJ's boilerplate assertion that plaintiff's testimony was "not entirely consistent" with his treatment history and the State agency medical opinions is not legally sufficient to reject plaintiff's testimony under the Lambert standard. The undersigned finds reversible error on this basis. Plaintiff is entitled to summary judgment.[5]

////

---

[5] The undersigned does not reach the remaining claims.

7

CONCLUSION

With error established, the court has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014). Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, the record as a whole creates serious doubt as to whether the claimant was, in fact, disabled during the relevant period. On remand, the ALJ is free to develop the record as needed, including asking a vocational expert hypothetical questions about available jobs based on a revised RFC. The court expresses no opinion regarding how the evidence should ultimately be weighed, and any ambiguities or inconsistencies resolved, on remand. The court also does not instruct the ALJ to credit any particular opinion or testimony. The ALJ may ultimately find plaintiff disabled during the entirety of the relevant period; may find plaintiff eligible for some type of closed period of disability benefits; or may find that plaintiff was never disabled during the relevant period, provided that the ALJ's determination complies with applicable legal standards and is supported by the record as a whole.

For the foregoing reasons, IT IS HEREBY RECOMMENDED THAT:

1. Plaintiff's motion for summary judgment (ECF No. 18) be granted;

2. The Commissioner's cross-motion for summary judgment (ECF No. 19) be denied; and

3. The matter be remanded for further administrative proceedings consistent with this order.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 30, 2021

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/turnbo0264.ssi.ckd_f&rs